## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO** <br> 80 F Street, N.W. <br> Washington, D.C. 20001, <br><br> **DEANNA CHELETTE**, and <br><br> **ALEXZANDRIA BOYD**, <br><br> *Plaintiffs*, <br><br> v. <br><br> **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION** <br> 131 M Street, N.E. <br> Washington, D.C. 20507 <br><br> and <br><br> **ANDREA R. LUCAS**, in her official capacity <br> as Chair of the U.S. Equal Employment <br> Opportunity Commission <br> 131 M Street, N.E. <br> Washington, D.C. 20507 <br><br> *Defendants*. | Civil Action No. <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs American Federation of Government Employees, AFL-CIO ("AFGE"), Deanna Chelette, and Alexzandria Boyd, by and through undersigned counsel, bring this Complaint against the U.S. Equal Employment Opportunity Commission ("EEOC" or "Commission") and Andrea R. Lucas, in her official capacity as Chair of the EEOC (collectively, "Defendants"), and allege as follows:

**INTRODUCTION**

1.      This case challenges the EEOC's categorical and indefinite suspension of federal-sector class complaints pending before its administrative judges. Although binding regulations require the Commission to handle class complaints promptly, Defendants have unlawfully directed administrative judges to indefinitely suspend class cases, barring them from holding hearings, deciding motions, issuing decisions, or taking any other action to move these properly filed complaints forward (the "Suspension Directive").

2.      Federal-sector class complaints are governed by the detailed processes codified in 29 C.F.R. § 1614.204. Those regulations confer procedural rights on federal employees and impose mandatory duties on the Commission and its administrative judges to process complaints in accordance with their terms. The Suspension Directive prevents those duties from being performed, effectively closing the doors to a longstanding adjudicatory process specifically created to address systemic discrimination affecting groups of federal employees.

3.      The resulting harm extends to every class agent and absent class member whose case has been suspended indefinitely. While cases are frozen, administrative judges cannot decide whether proposed classes should be certified, supervise merits discovery, set hearings, make liability determinations, or order classwide relief. Class agents are blocked from advancing the claims they promised to prosecute for the class, and absent class members are left without recourse, unable to opt out of the class proceeding or pursue their own claim in any forum while the case remains pending. As these cases languish, witness memories fade, employees leave the federal government, and records become harder to locate. And worst of all, employees remain subject to discriminatory practices and hostile work environments while the cases are suspended.

4.      AFGE is the largest union of federal workers, representing more than 800,000 federal civilian employees, including those who have filed or intend to file class complaints with the EEOC and those whose rights are affected by pending EEOC class cases. The Suspension Directive harms AFGE and its members by indefinitely suspending class complaints affecting union members and impairs AFGE's efforts to counsel and represent those members in EEOC proceedings.

5.      Plaintiff Deanna Chelette is an AFGE member and a class agent in a certified class complaint against the Federal Bureau of Prisons ("BOP"), alleging severe and ongoing sexual harassment against women employees at the Federal Correctional Complex in Pollock, Louisiana ("FCC Pollock"). *Pippen v. Fed. Bureau of Prisons*, EEOC No. 460-2024-00132X. Plaintiff Alexzandria Boyd is a corrections officer who currently works at FCC Pollock and falls within the *Pippen* class definition.

6.      The *Pippen* case had been certified as a class action and notice of the decision was being distributed to class members when the Suspension Directive halted it over *seven months* ago.

7.      On December 10, 2025, EEOC Administrative Judge Erania Ebron issued a "Notification of Case Processing Abeyance" in the *Pippen* matter, as a result of an EEOC-wide order to stay all federal-sector class case processing:

> Effective immediately, all case processing in the above-captioned matter must be paused until further notice. All scheduled deadlines and appearances are also cancelled. **This notification applies to all class cases in the federal sector**, including those alleging disparate impact.

(emphasis added).

8.      In the seven months since case processing was suspended, Plaintiffs Chelette, Boyd, and other class members have been subjected to, or are at risk of, ongoing and escalating sexual harassment that continues to go unremedied. They have no information about when, if ever,

3

their case will continue and whether they will be able to receive injunctive relief from the EEOC for their ongoing harm. Plaintiff Chelette and the other class agents have complied with their obligations under the EEOC's regulations but the Commission refuses to do the same.

9.    The Suspension Directive violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, in several respects. First, because the EEOC must follow its own regulations, Defendants' implementation of the Suspension Directive is contrary to law, in violation of APA § 706(2). Second, the Suspension Directive is arbitrary and capricious under APA § 706(2) because Defendants have provided no reasoned explanation for a blanket policy that halts an entire category of discrimination cases, considered no apparent alternatives, and addressed no reliance interests. Finally, Defendants are violating APA § 706(1) because the Suspension Directive unlawfully withholds and unreasonably delays action on federal-sector class cases that the EEOC is required by law to take.

10.    As a result, the Suspension Directive must be set aside. Plaintiffs seek an order vacating the Suspension Directive and compelling Defendants to resume and complete the processing of class complaints in accordance with law.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 704, and 706.

12.    Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (e)(1) because EEOC headquarters are located in the District of Columbia, the challenged policies were directed or approved by officials in this District, and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

## THE PARTIES

13.     Plaintiff American Federation of Government Employees, AFL-CIO ("AFGE") is a labor organization and unincorporated association headquartered in Washington, DC. AFGE is the largest union of federal workers. It represents approximately 800,000 federal civilian employees through its affiliated councils and locals in every state in the United States and the District of Columbia. AFGE is dedicated to fighting for dignity, safety, and fairness of the job for its members, and promoting efficiency and the improvement of government service so that government can more effectively serve the American people.

14.     AFGE's members routinely rely on the EEOC to raise and pursue Equal Employment Opportunity ("EEO") complaints of illegal discrimination and/or retaliation. AFGE members include federal workers who have filed class complaints with the EEOC or are class members included in complaints that have been indefinitely stayed by the Suspension Directive, including FCC Pollock employees who are class members in *Pippen v. Federal Bureau of Prisons*, EEOC No. 460-2024-00132X. As a result, AFGE members have been and will be adversely affected by the EEOC's failure to continue the processing and adjudication of class complaints.

15.     AFGE also maintains a department dedicated to EEO matters. This department, the AFGE Women's and Fair Practices Department ("WFP"), is headed by an elected national officer, the National Vice-President ("NVP") for Women and Fair Practices, who exercises general supervision over a staff that includes a Supervisory Attorney, two Equal Employment Opportunity Specialist Attorneys, and three administrative staff. WFP is a core department of AFGE upon which AFGE's members rely, and the NVP for WFP is one of the three top national officers for AFGE. WFP's attorneys regularly conduct training on EEOC case handling for AFGE's members and provide counseling for AFGE's members, including with respect to the EEOC's class

complaint process. As part of WFP's role as a core department of AFGE, WFP's attorneys also provide, and will continue to provide, direct representation to AFGE's members in hundreds of cases before the EEOC. The EEOC's Suspension Directive substantially impairs AFGE's ability to effectively counsel and represent members who are involved with or seeking to utilize the EEOC's federal-sector complaint process.

16.     Plaintiff Deanna Chelette (formerly Deanna Altenberger) is an AFGE member and current BOP employee who resides in Louisiana. She is a class agent in *Pippen v. Federal Bureau of Prisons*, EEOC No. 460-2024-00132X, a certified federal-sector class complaint alleging widespread sexual harassment for which management fails to take prompt and reasonable preventative and corrective action. As a correctional officer at FCC Pollock, Plaintiff Chelette could be assigned to work anywhere within the prison complex with the male inmates who expose her and her female colleagues to exceptionally vulgar sexual harassment including demeaning sexual comments and lewd gestures, exhibitionist nudity and masturbation, and rape threats. Despite class action certification in *Pippen* and the inmates' ongoing sexual harassment, FCC Pollock management's response to the sexual harassment has worsened.

17.     Plaintiff Alexzandria Boyd is a current BOP employee who resides in Louisiana. She is a class member in *Pippen v. Federal Bureau of Prisons*, EEOC No. 460-2024-00132X, a certified federal-sector class complaint alleging widespread sexual harassment for which management fails to take prompt and reasonable preventative and corrective action. As a correctional officer at FCC Pollock, Plaintiff Boyd could be assigned to work anywhere within the prison complex with the male inmates who continue to expose her and her female colleagues to exceptionally vulgar sexual harassment including demeaning sexual comments and lewd gestures, exhibitionist nudity and masturbation, and rape threats. Despite class action certification in *Pippen*

6

and the inmates' ongoing sexual harassment, FCC Pollock management's response to the sexual harassment has worsened.

18. Defendant EEOC is a federal agency of the United States. The EEOC's headquarters are located at 131 M Street, N.E., Washington, D.C. 20507.

19. Defendant Andrea R. Lucas is Chair of the EEOC and is sued in her official capacity.

**FACTUAL ALLEGATIONS**

**A.    The EEOC's Binding Regulations Require Adjudication of Federal-Sector Class Complaints**

20. Title VII of the Civil Rights Act of 1964 prohibits discrimination in federal employment and instructs the EEOC to issue rules "necessary and appropriate" to enforce that prohibition. 42 U.S.C. § 2000e-16.

21. Pursuant to this authority, the Commission promulgated 29 C.F.R. Part 1614 through notice-and-comment rulemaking, codifying a detailed procedure for adjudicating both individual and class complaints of discrimination from federal workers. *See* 29 C.F.R. § 1614.103(a) ("Individual and class complaints of employment discrimination . . . *shall* be processed in accordance with this part." (emphasis added)). For purposes of implementing its regulations, the EEOC has also issued Management Directive 110 ("MD-110") which provides guidance relating to the federal-sector complaint process.

22. The federal-sector administrative process was designed to provide a "quicker, less formal, and less expensive" means of resolving workplace discrimination claims "within the Federal Government and outside of court." *West v. Gibson*, 527 U.S. 212, 218-19 (1999) (citing 42 U.S.C. § 2000e-16(c)). Employees pay no filing fee to pursue an EEO complaint, request a hearing, or appeal to the Commission. Unlike in federal court, class agents do not need to hire an

7

attorney to represent them in administrative class proceedings. And because the hearing is intended to be informal, the process is not strictly governed by the Federal Rules of Civil Procedure and Evidence.

23.    The Commission has maintained a federal-sector class procedure for decades and has repeatedly strengthened it through rulemaking. For instance, during its 1999 rulemaking, the Commission made changes to 29 C.F.R. Part 1614 in order "to *strengthen* the class complaint process" and "ensure that complaints raising class issues are not unjustifiably denied class certification in the administrative process." 64 Fed. Reg. 37,644 (July 12, 1999) (emphasis added). The Commission explicitly recognized that class actions are "essential mechanism for attacking broad patterns of workplace discrimination and providing relief to victims of discriminatory policies or systemic practices." *Id.*

24.    In 2012, the EEOC further revised the regulations after convening an expert workgroup that "carefully considered the class complaint process and made a number of recommendations to *improve* its effectiveness." 77 Fed. Reg. 43,498 (July 25, 2012) (emphasis added). In adopting the workgroup's recommendation, the EEOC's final rule (1) made an administrative judge's decision on the merits of a class complaint a final, rather than recommended, decision and (2) required expedited processing of certification decisions "to *shorten* the class certification process." *Id.* (emphasis added). According to the Commission, these amendments were intended to "make it *more feasible* for class claims to be brought and resolved in the administrative system."[1]

---

[1] Equal Employment Opportunity Commission, *Questions and Answers: Final Federal Sector Complaint Processing Regulations 29 C.F.R. Part 1614*, https://www.eeoc.gov/federal-sector/management-directive/questions-and-answers-final-federal-sector-complaint-processing (emphasis added).

25. By continually making the class action mechanism more accessible to federal workers, the Commission has reaffirmed again and again that the class mechanism is necessary for carrying out its Congressionally mandated duties to eradicate discrimination in the federal workforce.

26. 29 C.F.R. § 1614.204 establishes a structured process for complaints alleging discrimination against a group of federal employees. It begins with counseling and the filing of a class complaint with the employing agency. 29 C.F.R. § 1614.204(b)-(c). As part of their duties under the regulations, EEO Counselors are required to give complainants "notice of the right to file a class complaint." *Id*. § 1614.204. If the individual informs the Counselor that they wish to file a class complaint, the Counselor "shall explain the class complaint procedures and the responsibilities of the class agent." *Id.* § 1614.204. The class complaint "must be filed with the agency that allegedly discriminated not later than 15 days after the agent's receipt of the notice of right to file a class complaint." *Id.* § 1614.204(c)(2).

27. A complainant "may move for class certification at any reasonable point in the process when it becomes apparent that there are class implications to the claim raised in an individual complaint." *Id.* § 1614.204(b).

28. The regulation commands that a class complaint "shall be processed promptly." *Id.* § 1614.204(c)(3).

29. The employing agency must transmit the complaint to the Commission, and the Commission "shall assign" it to an administrative judge. *Id.* § 1614.204(d)(1). Once assigned, the administrative judge has "full responsibility for the adjudication of the complaint," including development of the record. *Id.* § 1614.109(a). With this delegation of power, the "Commission

intends that the Administrative Judge will take complete control of the case."[2]

30.     The administrative judge must decide whether to accept or dismiss the proposed class and "shall transmit his or her decision to accept or dismiss a complaint to the agency and the agent." *Id.* § 1614.204(d)(7).  If the class complaint is accepted, the employing agency must notify the class, and the administrative judge must provide the parties time to prepare the case and a reasonable opportunity to develop relevant evidence. *Id.* § 1614.204(e)-(f). If either party files a motion to compel, the administrative judge "will rule expeditiously on the request for discovery." MD-110, Chapter 7, Section IV.D.4. *See also* MD-110, Chapter 7, Section IV.A.2 (discovery should be conducted "as to avoid delay and to facilitate the adjudication of the case").

31.     After the discovery period, the administrative judge "shall set a date for the hearing." 29 C.F.R. § 1614.204(h). Following the hearing, the administrative judge "shall transmit to the agency and class agent a decision on the complaint, including findings, systemic relief for the class, and any individual relief, where appropriate, with regard to the personnel action or matter that gave rise to the complaint." *Id.* § 1614.204(i).

32.     If discrimination is found, the regulations require classwide notice and a process for individual claims, over which the administrative judge retains jurisdiction. *Id.* § 1614.204(k)-(l). A final order on a class complaint "shall . . . be binding on all members of the class and the agency." *Id.* § 1614.204(j)(3).

33.     The class agent and employing agency may settle at any time, but a class resolution becomes binding only after notice to the class and approval from an administrative judge who reviews the settlement for fairness, adequacy, and reasonableness. *Id.* § 1614.204(g).

---

[2] *See* MD-110, ch. 7 § III.B, https://www.eeoc.gov/federal-sector/management-directive/chapter-7-hearings ("The Commission intends that the Administrative Judge will take complete control of the case once a hearing is requested.").

34.     This process also determines the rights of employees who are not named as agents. Members of a class may not opt out, and individual complaints presenting the same claims are subsumed into the class proceeding. *See* EEOC Management Directive 110, ch. 8, §§ III.C, V.C, X.C; *Wade v. Donahoe*, No. CIV.A. 11–3795, 2012 WL 3844380, at *13 (E.D. Pa. Sept. 4, 2012).

35.     Nothing in Part 1614 or Management Directive 110 authorizes the Commission to stop all federal-sector class adjudications categorically or indefinitely.

**B.      The *Pippen* Class Complaint**

36.     Plaintiff Chelette is a class agent, and Plaintiff Boyd is a member of the certified class, in *Pippen v. Federal Bureau of Prisons*, EEOC No. 460-2024-00132X.

37.     On April 11, 2024, BOP transmitted the class complaint in *Pippen* to the EEOC for a decision on certification under 29 C.F.R. § 1614.204(d). The EEOC assigned Administrative Judge Erania Ebron.

38.     The EEOC complaint alleges that BOP subjected women at FCC Pollock to a sex-based hostile work environment by failing to prevent and correct known sexual harassment by inmates. The alleged harassment includes vulgar verbal abuse, exhibitionist nudity and masturbation, rape threats, and unwanted touching.

39.     The class agents submitted declarations from eight women describing the harassment and management's response. BOP acknowledged that at least fifty women had filed one or more related incident reports, and the class agents estimated that the proposed class included at least 182 women.

40.     On March 17, 2025, Administrative Judge Ebron certified the class after reviewing the complaint, agency submissions, declarations, and the parties' briefs. The judge concluded that the class satisfied the requirements of 29 C.F.R. § 1614.204(a)(2).

41.     On April 21, 2025, the Department of Justice accepted the certification decision. The certified class is defined as:

> All women who have worked in the United States Department of Justice, Federal Correctional Complex in Pollock, Louisiana, who were allegedly subjected to discriminatory sexual harassment from September 22, 2023, to the present, except for any period of time when a putative class member served in the position of Warden, Associate Warden, Disciplinary Hearing Officer, Executive Assistant, or Lieutenant or Captain in the Correctional Services Department.

42.     After certification, notice of the decision was distributed to the class, informing the class members that their interests were being represented by the *Pippen* class action.[3] Plaintiff Chelette and the other class agents complied with their obligations and stood ready to continue discovery, proceed to a hearing, and obtain a decision when they were suddenly notified that their case was indefinitely halted.

**C.     The EEOC's Categorical Suspension Directive**

43.     On December 10, 2025, EEOC Administrative Judge Ebron issued a "Notification of Case Processing Abeyance" in the *Pippen* matter. The Notification stated:

> Effective immediately, all case processing in the above-captioned matter must be paused until further notice. All scheduled deadlines and appearances are also cancelled. This notification applies to all class cases in the federal sector, including those alleging disparate impact.

44.     On June 23, 2026, Administrative Judge Ebron informed the parties by email that the *Pippen* matter had been removed from "stay status," but that "case processing remains paused." When counsel asked what distinction existed between a stay and a pause, the judge responded that "[t]here is no difference between a stay and a pause in case processing" and that she had "no additional information."

---

[3]    Prior to the order pausing processing of the case, Plaintiffs' counsel intended to raise concerns regarding whether the BOP sufficiently provided notice to all class agents.

45.    On information and belief, EEOC leadership issued and continues to enforce the instruction requiring administrative judges to stop processing federal-sector class complaints.

46.    The Suspension Directive is binding in practice and has immediate legal and practical consequences in pending class cases. Administrative judges have cancelled deadlines, appearances, discovery, hearings, and other case activity because of the Suspension Directive.

47.    Defendants have not published the Suspension Directive or provided any explanation or authority for the decision. They have provided no procedure for an affected party to seek an exception or case-specific review. The Directive has no stated termination date, leaving thousands of federal employees with no indication of when the EEOC will permit the adjudication of class claims to resume, and under what circumstances.

**D.    The Suspension Causes Immediate and Ongoing Harm**

48.    The Suspension Directive instructs administrative judges to halt class cases at every stage. As a result, class agents cannot obtain certification decisions or notice to the proposed class. In accepted cases, the parties cannot complete Commission-supervised discovery, obtain a hearing and merits decision, or secure injunctive relief designed to resolve the discrimination.

49.    The Directive is also harmful to absent class members. In class cases, they cannot opt out, as their overlapping individual complaints are subsumed as soon as a formal class complaint is filed. They therefore cannot pursue their own claims in any forum, administrative or judicial, while the proceeding that governs their rights remains frozen.e

50.    Delay also reduces the likelihood that class members will receive effective relief. Employees may leave the workplace or federal service before notice issues. Others may never learn that a class case covers their claims. The longer adjudication is withheld, the harder it becomes to identify affected employees and administer individual relief.

51.     The same delay impairs the evidentiary record in class cases. Witnesses become unavailable, memories fade, and documents become more difficult to locate. Those harms are magnified in systemic cases that depend on proof developed across multiple facilities, offices, or years.

52.     Meanwhile, the discriminatory practices challenged in pending cases continue. Employees seeking prospective relief remain exposed to policies and work conditions they contend are discriminatory, and federal agencies lose the opportunity to obtain a timely, authoritative resolution of alleged systemic violations.

53.     Indeed, Plaintiffs Chelette, Boyd, and other *Pippen* class members employed at FCC Pollock face an ongoing risk of being subjected to severe sexual harassment, with no recourse, so long as their case is stayed. While the class case remains suspended, women employed at FCC Pollock continue to suffer daily sexual harassment that materially and adversely affects their working conditions, without a forum in which to obtain relief.

54.     As a result, federal workers who rely on the process the Commission created by regulations—which are binding on the EEOC—have been left in limbo, their claims suspended with no indication when, if ever, they will resume. In electing to proceed through the administrative process, class agents and absent class members relied on the Commission's regulatory framework to adjudicate their claims and, if the evidence warrants, obtain relief enjoining the unlawful conduct as well as relief for themselves and the class. Defendants' unlawful suspension of that process has deprived them of the adjudicatory mechanism the Commission itself created and is legally obligated to provide.

55.     The fact that Title VII permits these claimants to opt out of the federal sector administrative process and bring their discrimination claims *de novo* in a judicial forum is not an

adequate substitute for adjudication of their claims in the EEOC administrative process. To proceed in court, they would be required to commence litigation of their claims anew, developing a new record, and securing class certification again, while being deprived of a forum intended to be "quicker, less formal, and less expensive." *West*, 527 U.S. at 218-29. Fundamentally, filing a new discrimination action in federal court would neither restore the Commission-created process on which federal employees rely nor would it remedy Defendants' unlawful replacement of a binding regulation with a categorical non-processing rule.

56. Vacating the Directive would redress these harms across all pending class cases that have been indefinitely suspended. It would remove the unlawful barrier that prevents administrative judges from exercising the authority conferred on them by the EEOC and the federal sector regulations and allow each case to proceed as the governing law and record warrant.

## CAUSES OF ACTION

### COUNT I
### ADMINISTRATIVE PROCEDURE ACT - CONTRARY TO LAW
### (5 U.S.C. § 706(2)(A), (C))

57. Plaintiffs incorporate and reallege the preceding paragraphs as if fully set forth herein.

58. The APA requires a reviewing court to "hold unlawful and set aside" agency action that is "not in accordance with law," is "in excess of statutory jurisdiction, authority, or limitations," or was adopted "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C), (D).

59. The Commission exercised its delegated authority by promulgating 29 C.F.R. Part 1614. Those binding regulations require prompt processing of class complaints and assign specific adjudicatory responsibilities to the Commission and its administrative judges. *See* 29 C.F.R. §

15

1614.103(a) ("Individual and class complaints of employment discrimination . . . *shall* be processed in accordance with this part." (emphasis added)).

60.     The Suspension Directive conflicts directly with those requirements. It prevents the Commission from processing class complaints promptly and prevents administrative judges from exercising the authority and performing the duties the regulations assign to them. The Suspension Directive conflicts directly with 29 C.F.R. § 1614.204(c)(3)'s command of prompt processing without undue delay and with the mandatory actions prescribed throughout §§ 1614.109 and 1614.204.

61.     An agency must follow its own binding regulations. *See Mass. Fair Share v. L. Enf't Assistance Admin.*, 758 F.2d 708, 711 (D.C. Cir. 1985) ("It has long been settled that a federal agency must adhere firmly to self-adopted rules by which the interests of others are to be regulated.").

62.     By replacing the governing regulations with a categorical non-processing rule, Defendants have acted contrary to law and exceeded their delegated authority.

63.     The Suspension Directive is final agency action reviewable under 5 U.S.C. § 704. It represents the Commission's definitive decision that federal-sector class adjudications may not proceed and it has immediate legal and practical consequences by cancelling pending proceedings and preventing the performance of duties required by 29 C.F.R. § 1614.204. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

64.     Plaintiffs have no other adequate remedy in a court for the injury alleged here.

65.     Plaintiffs are entitled to an order holding the Suspension Directive unlawful and setting it aside.

16

## COUNT II
## ADMINISTRATIVE PROCEDURE ACT - ARBITRARY AND CAPRICIOUS
### (5 U.S.C. § 706(2)(A))

66.    Plaintiffs incorporate and reallege the preceding paragraphs as if fully set forth herein.

67.    The APA requires a reviewing court to "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency must provide a reasoned explanation for its action, consider important aspects of the problem, and account for serious reliance interests when changing a longstanding policy. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 41-43 (1983).

68.    Defendants abruptly departed from decades of processing federal-sector class complaints under § 1614.204. In doing so, they provided no explanation for the Suspension Directive, identified no problem it addresses, cited no evidence supporting it, and identified no lawful policy objective. An agency changing a longstanding policy must provide a reasoned explanation and account for how the change is affecting the settled reliance interests engendered by the policy previously in place. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 212 (2016) ("[A]n unexplained inconsistency in agency policy is a reason for holding an interpretation to be an arbitrary and capricious change from agency practice." (cleaned up)); *State Farm,* 463 U.S. at 41-42 (a "settled course of behavior embodies the agency's informed judgment that, by pursuing that course, it will carry out the policies committed to it by Congress").

69.    Defendants failed to consider the Suspension Directive's conflict with binding regulations and the Commission's longstanding practice. They also failed to address the risk of lost evidence and continuing discrimination. Defendants disregarded the reliance interests of

17

employees who invoked the class process, employing agencies that participated in it, and administrative judges charged with carrying it out. There is no indication that they considered any less onerous alternatives.

70.     The Suspension Directive is final agency action reviewable under 5 U.S.C. § 704. It represents the Commission's definitive decision that federal-sector class adjudications may not proceed and it has immediate legal and practical consequences by cancelling pending proceedings and preventing the performance of duties required by 29 C.F.R. § 1614.204. *See Bennett*, 520 U.S. at 177-78.

71.     Plaintiffs have no other adequate remedy in a court for the injury alleged here.

72.     The Suspension Directive is arbitrary and capricious and must be set aside under 5 U.S.C. § 706(2)(A).

## COUNT III

### ADMINISTRATIVE PROCEDURE ACT – AGENCY ACTION UNLAWFULLY WITHHELD AND UNREASONABLY DELAYED

### (5  U.S.C. § 706(1))

73.     Plaintiffs incorporate and reallege the preceding paragraphs as if fully set forth herein.

74.     The APA requires an agency to "proceed to conclude a matter presented to it" within "a reasonable time" and authorizes a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 555(b), 706(1). A claim under § 706(1) lies when an agency fails to take a discrete action that it is legally required to take. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64-65 (2004).

75.     The Commission's regulations impose discrete, mandatory duties in class cases. The assigned administrative judge must exercise full responsibility for the case, oversee

development of the record, set a hearing after the preparation period, and issue a decision. 29 C.F.R. §§ 1614.109(a), (i), 1614.204(f), (h)-(i). The Suspension Directive prevents the administrative judge from performing those duties.

76.     The delay is unreasonable under the factors identified in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984). It violates the regulation's express rule of prompt processing without undue delay; concerns claims affecting employee safety, welfare, and equal employment opportunity; causes concrete evidentiary and remedial prejudice; and does not advance higher-priority adjudications because it disables an entire category of cases.

77.     Plaintiffs are entitled to an order under 5 U.S.C. § 706(1) compelling the EEOC to resume and complete the processing of federal-sector class complaints in accordance with 29 C.F.R. §§ 1614.109 and 1614.204, to adjudicate their pending applications in accordance with the regulatory requirements.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1.     Declare that the Suspension Directive is contrary to law, in excess of Defendants' authority, and arbitrary and capricious, in violation of 5 U.S.C. §§ 706(2)(A) and (C);

2.     Declare that Defendants' categorical and indefinite suspension of federal-sector class-complaint processing violates 5 U.S.C. §§ 555(b) and 706(1);

3.     Set aside and vacate the Suspension Directive pursuant to § 706(2), and enjoin Defendants, and those acting on their behalf, from applying or enforcing the Suspension Directive.

4.     Require Defendants to provide prompt written notice of the Court's order to all administrative judges and parties in pending federal-sector class cases;

19

5.      Compel Defendants under 5 U.S.C. § 706(1) to resume and complete the processing of class complaints in accordance with 29 C.F.R. §§ 1614.109 and 1614.204 within a reasonable time;

6.      Award Plaintiffs reasonable attorneys' fees and costs; and

7.      Grant such other and further relief as the Court deems just and proper.


July 28, 2026                                            Respectfully submitted,

                                                        /s/ Joseph M. Sellers
                                                        Joseph M. Sellers
                                                        Phoebe M. Wolfe
                                                        Cohen Milstein Sellers & Toll LLP
                                                        1100 New York Avenue, N.W., Suite 800
                                                        Washington, D.C. 20005
                                                        Tel: (202) 408-4600
                                                        Fax: (202) 408-4699
                                                        jsellers@cohenmilstein.com
                                                        pwolfe@cohenmilstein.com

                                                        Heidi R. Burakiewicz
                                                        Burakiewicz & DePriest
                                                        1120 Connecticut Avenue, N.W., Suite 500
                                                        Washington, D.C. 20036
                                                        Tel: (202) 856-7500
                                                        Fax: (202) 217-2599
                                                        hburakiewicz@bdlawdc.com

                                                        Harold Craig Becker
                                                        Taryn Wilgus Null
                                                        Tianna J. Mays
                                                        Democracy Defenders Fund
                                                        600 Pennsylvania Avenue, S.E., No. 15180
                                                        Washington, D.C. 20003
                                                        Tel: (202) 594-9958
                                                        craig@democracydefenders.org
                                                        taryn@democracydefenders.org
                                                        tianna@democracydefenders.org

                                                        Counsel for Plaintiffs

Rushab B. Sanghvi
Andres M. Grajales
American Federation of Government
Employees, AFL-CIO
80 F Street, N.W.
Washington, D.C. 20001
Tel: (202) 639-6426
SanghR@afge.org
Grajaa@afge.org

*Counsel for Plaintiff American Federation
of Government Employees (AFGE)*

21