**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| American Federation of Government Employees, AFL-CIO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. Equal Employment Opportunity Commission, *et al.*,<br><br>Defendants. | Case No. 1:26-cv-02640-CKK |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND STAY**

## TABLE OF CONTENTS


INTRODUCTION ........................................................................................................ 1

BACKGROUND......................................................................................................... 2

LEGAL STANDARD ................................................................................................. 3

ARGUMENT ............................................................................................................. 4

I. Plaintiffs have not established a likelihood of success on the merits ............................... 4

A. Plaintiffs have not shown a substantial likelihood of subject-matter jurisdiction .......... 4

B. Plaintiffs do not challenge any final agency action ...................................................... 8

II. Plaintiffs have not clearly shown irreparable harm .......................................................... 9

CONCLUSION......................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases** **Pages(s)**

*Alcresta Therapeutics, Inc. v. Azar*,
318 F. Supp. 3d 321 (D.D.C. 2018) .......... 12

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) .......... 7

*Am. Chemistry Council v. Dep't of Transp.*,
468 F.3d 810 (D.C. Cir. 2006) .......... 7

*Anderson v. Dep't Housing & Urban Develop.*,
731 F. Supp. 3d 19 (D.D.C. 2024) .......... 7

*Arpaio v. Obama*,
797 F.3d 11 (D.C. Cir. 2015) .......... 6

*Ass'n for Educ. Fin. & Pol'y, Inc. v. McMahon*,
786 F. Supp. 3d 13 (D.D.C. 2025) .......... 9

*Campaign Legal Ctr. v. Fed. Election Comm'n*,
860 F. App'x 1 (D.C. Cir. 2021) .......... 5

*Cardinal Health, Inc. v. Holder*,
846 F. Supp. 2d 203 (D.D.C. 2012) .......... 12

*Cayuga Nation v. Zinke*,
302 F. Supp. 3d 362 (D.D.C. 2018) .......... 10

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006) .......... 9, 12

*Chavis v. Garrett*,
419 F. Supp. 3d 24 (D.D.C. 2019) .......... 8

*Church v. Biden*,
573 F. Supp. 3d 118 (D.D.C. 2021) .......... 11, 12

*Citizens for Resp. & Ethics* in *Wash. v. Ctrs. for Disease Control & Prevention*,
786 F. Supp. 3d 83 (D.D.C. 2025). .......... 12, 13

*Clevinger v. Advoc. Holdings, Inc.*,
134 F.4th 1230 (D.C. Cir. 2025) .......... 11

*Corp. for Pub. Broad. v. FEMA*,
792 F. Supp. 3d 67 (D.D.C. 2025) .......... 12

*Csoka v. FDA*,
No. CV 24-1486 (ABJ), 2025 WL 958364 (D.D.C. Mar. 31, 2025) ........................................ 5

*Ctr. for Biological Diversity v. EPA*,
861 F.3d 174 (D.C. Cir. 2017) ........................................ 5

*Ctr. for Biological Diversity v. Dep't of Int.*,
144 F.4th 296 (D.C. Cir. 2025) ........................................ 7

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ........................................ 7

*Food & Water Watch, Inc. v. Vilsack*,
808 F.3d 905 (D.C. Cir. 2015) ........................................ 4, 5

*Friends of Capital Crescent Trail v. Fed. Transit Admin.*,
263 F. Supp. 3d 144 (D.D.C. 2017) ........................................ 11

*FTC v. Standard Oil Co. of Cal.*,
449 U.S. 232 (1980) ........................................ 11

*Fund for Animals v. Frizzell*,
530 F.2d 982 (D.C. Cir. 1975) ........................................ 10

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*,
460 F.3d 13 (D.C. Cir. 2006) ........................................ 8

*Hanson v. District of Columbia*,
120 F.4th 223 (D.C. Cir. 2024) ........................................ 4

*Hearst Radio, Inc. v. FCC*,
167 F.2d 225 (D.C. Cir. 1948) ........................................ 8

*Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
878 F.3d 371 (D.C. Cir. 2017) ........................................ 4

*Kareem v. Haspel*,
986 F.3d 859 (D.C. Cir. 2021) ........................................ 6

*League of Women Voters of U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ........................................ 12

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........................................ 5

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) ........................................ 9

*Mexichem Specialty Resins, Inc. v. EPA*,
787 F.3d 544 (D.C. Cir. 2015) ........................................ 9, 12

*Mott Thoroughbred Stables, Inc. v. Rodriguez*,
87 F. Supp. 3d 237 (D.D.C. 2015) ........................................ 10

*Mylan Pharms., Inc. v. Shalala*,
81 F. Supp. 2d 30 (D.D.C. 2000) ........................................ 10

*Nat'l Parks Conservation Ass'n v. Semonite*,
282 F. Supp. 3d 284 (D.D.C. 2017) ........................................ 10

*Nken v. Holder*,
556 U.S. 418 (2009) ........................................ 4

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) ........................................ 9

*NRDC v. U.S. Nuclear Regul. Comm'n,*
680 F.2d 810 (D.C. Cir. 1982) ........................................ 7

*Open Top Sightseeing USA v. Mr. Sightseeing, LLC*,
48 F. Supp. 3d 87 (D.D.C. 2014) ........................................ 9

*Pharm. Rsch. & Mfrs. of Am. v. HHS*,
656 F. Supp. 3d 137 (D.D.C. 2023) ........................................ 5, 7

*Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*,
489 F.3d 1279 (D.C. Cir. 2007) ........................................ 5

*Randolph-Sheppard Vendors of Am. v. Weinberger*,
795 F.2d 90 (D.C. Cir. 1986) ........................................ 11

*Renegotiation Bd. v. Bannercraft Clothing Co.*,
415 U.S. 1 (1974) ........................................ 11

*Sierra Club v. EPA*,
793 F. Supp. 3d 158 (D.D.C. 2025) ........................................ 9, 10

*Sierra Club v. Jackson*,
833 F. Supp. 2d 11 (D.D.C. 2012) ........................................ 4

*Sierra Club v. U.S. Dep't of Energy*,
825 F. Supp. 2d 142 (D.D.C. 2011) ........................................ 10

*Simon v. E. Ky. Welfare Rights Org.*,
426 U.S. 26 (1976) ........................................ 6

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .................................................. 4, 5, 6

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) .................................................. 5

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .................................................. 4, 5

*W. Watersheds Project v. Bernhardt*,
468 F. Supp. 3d 29 (D.D.C. 2020) .................................................. 8

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .................................................. 3, 4, 8

**Statutes**

5 U.S.C. § 702 .................................................. 8

5 U.S.C. § 704 .................................................. 8

5 U.S.C. § 705 .................................................. 3, 4, 13

42 U.S.C. § 2000e-16(a) .................................................. 2

**Regulations**

29 C.F.R. part 1614 .................................................. 2, 6, 11

## INTRODUCTION

Plaintiffs believe the Equal Employment Opportunity Commission (EEOC) secretly ordered, in late 2025, the suspension of all class complaints alleging employment discrimination at federal agencies. This belief is largely based on the actions of the administrative judge handling the class proceeding in which plaintiffs Deanna Chelette and Alexzandria Boyd are participants, *Pippen v. Federal Bureau of Prisons*, EEOC No. 460-2024-00132X. Unfortunately, over the past eight months, Plaintiffs never raised their suspicion with the agency. Instead, they blindsided EEOC with this lawsuit and a motion for a preliminary injunction.

Had Plaintiffs reached out to EEOC before going to court, they would have learned that EEOC *never issued* the so-called "Suspension Directive" and *Pippen* should not have been suspended. To prove the point, a new administrative judge has been assigned to *Pippen*, who entered a scheduling order on August 10, 2026 for discovery and summary judgment. This order explicitly supersedes the prior judge's abeyance order, "which was issued in error." EEOC also ensured that appropriate scheduling orders were issued in every other proceeding identified in Plaintiffs' filings. EEOC, through litigation counsel, even invited Plaintiffs to identify for agency investigation any other class complaints that have been suspended. Despite EEOC's prompt and complete corrective actions, Plaintiffs refused to withdraw their motion for a preliminary injunction, so EEOC is compelled to file this opposition.

Plaintiffs are not entitled to extraordinary relief from this Court for two main reasons. *First*, Plaintiffs are not substantially likely to succeed on the merits. Plaintiffs lack standing: no plaintiff has established a cognizable, concrete injury from the delay of an administrative proceeding that is redressable by a favorable judgment from this Court. Even if they had, any issue about the suspension of EEOC proceedings is moot because the proceeding in which Plaintiffs have a stake—*Pippen*—has resumed. Furthermore, because EEOC never issued a "Suspension Directive," Plaintiffs' Administrative Procedure Act (APA) claims lack any basis.

*Second*, Plaintiffs have not clearly shown irreparable harm. There is no administrative suspension order that the Court could lift, and *Pippen* is proceeding. Nor have Plaintiffs clearly

proven any residual irreparable harm that could justify entry of a preliminary injunction. Overtaken by events and legally deficient, Plaintiffs' motion should be denied.

## BACKGROUND

"[D]iscrimination based on race, color, religion, sex, or national origin" in the federal workplace is prohibited. 42 U.S.C. § 2000e-16(a). Congress vested EEOC with various authorities to enforce this prohibition, including by adjudicating administrative complaints of discrimination. *See id.* § 2000e-16(b); *see generally* 29 C.F.R. part 1614. When numerous individuals allege employment discrimination by a federal agency, they may file a class complaint. 29 C.F.R. § 1614.204. The resulting administrative proceeding is overseen by an administrative judge, who sets the schedule and makes the procedural and substantive rulings necessary to resolve the complaint. *See generally id.*

One such class complaint is *Pippen*, which alleges discrimination at the Federal Correctional Complex in Pollock, Louisiana. *See* ECF No. 13-5, at 2 (complaint of discrimination); ECF No. 13-8 (agency order accepting class certification). Plaintiffs Chelette and Boyd are members of the *Pippen* class. *See* ECF Nos. 13-3 and 13-4. On December 10, 2025, the administrative judge then-presiding over *Pippen* ordered that "all case processing . . . must be paused" and cancelled "[a]ll scheduled deadlines." ECF No. 13-10, at 2. The administrative judge further stated, without supporting citation or explanation, that "[t]his notification applies to all class cases in the federal sector." *Id.* The matter was "removed from 'stay' status" in June 2026, yet the administrative judge told the parties that "case processing remains paused." ECF No. 13-11, at 4. At no point after either the December 2025 order or the June 2026 email exchange did Chelette or Boyd raise this issue with EEOC.

On July 28, 2026, Chelette and Boyd—as well as the American Federation of Government Employees, AFL-CIO (AFGE)—filed this APA suit against EEOC to challenge the purported "categorical and indefinite suspension of federal-sector class complaints pending before [EEOC] administrative judges." ECF No. 1 (Compl.) ¶ 1. A few days later, on August 3, Plaintiffs moved

for a preliminary injunction requiring EEOC "to resume processing federal-sector class complaints" and for a stay of the so-called "Suspension Directive" under 5 U.S.C. § 705. ECF No. 13, at 1. Plaintiffs did not "confer with Defendants pursuant to Local Civil Rule 7(m) regarding the relief requested in this motion" before filing. *Id.* 3.

EEOC took immediate steps to address the improper stay. By August 10, *Pippen* had been transferred to a new administrative judge, who acknowledged "the previously assigned administrative judge's order, dated December 10, 2025, . . . was issued in error." Ex. A, at 1. The new administrative judge set a schedule for discovery and summary judgment, which explicitly "supersede[d]" the previous abeyance order. *Id.*

Beyond *Pippen*, EEOC ensured that new scheduling orders were issued in matters that do not involve Plaintiffs but nonetheless were referenced in the Declaration of Heidi Burakiewiz, upon which Plaintiffs rely in their motion for preliminary injunction. *Compare* ECF No. 13-6 ¶¶ 3, 6*, with* Exs. B and C (scheduling orders in *Kelley* and *Schildgen*). Furthermore, EEOC asked Plaintiffs to send "the case name and number" of any "other federal-sector class complaints in which processing was suspended and has not resumed," so the agency can investigate. Ex. D (August 10, 2026 email from Defendants' counsel).

To avoid unnecessary litigation and preserve judicial resources, counsel for EEOC asked Plaintiffs to withdraw their motion for a preliminary injunction. *See id.* Plaintiffs refused. Accordingly, pursuant to the Court's scheduling order of August 4, 2026, Defendants now oppose Plaintiffs' motion for a preliminary injunction.[1]

## LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*,

[1] The Court also ordered Defendants to "file a copy of any administrative record underlying the decisions at issue." However, as EEOC's Chief Operating Officer states, the so-called "Suspension Directive" that Plaintiffs challenge does not exist. Decl. of Sharon A. Rose ¶ 3. Thus, there is no administrative record to produce. *Id.*

555 U.S. 7, 22 (2008). "To get a preliminary injunction the movant must show: (1) '[it] is likely to succeed on the merits,' (2) '[it] is likely to suffer irreparable harm in the absence of preliminary relief,' (3) 'the balance of equities tips in [its] favor,' and (4) issuing 'an injunction is in the public interest.'" *Hanson v. District of Columbia*, 120 F.4th 223, 231 (D.C. Cir. 2024) (quoting *Winter*, 555 U.S. at 20). Because the defendants here are government entities, the balance of equities and the public interest factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). The "same" preliminary injunction standard also governs a request for a stay of agency action under 5 U.S.C. § 705. *Sierra Club v. Jackson*, 833 F. Supp. 2d 11, 30 (D.D.C. 2012).

## ARGUMENT

### I. Plaintiffs have not established a likelihood of success on the merits

#### A. Plaintiffs have not shown a substantial likelihood of subject-matter jurisdiction

A "party who seeks a preliminary injunction must show a 'substantial likelihood' of standing" and other jurisdictional prerequisites. *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (quotation omitted). "A plaintiff unlikely to have" established subject-matter jurisdiction "is *ipso facto* unlikely to succeed" on merits. *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 375 n.2 (D.C. Cir. 2017). Plaintiffs have failed twice over. Their alleged procedural injuries do not suffice for standing. And even if they did, Plaintiffs' injuries have been fully redressed by EEOC's voluntary efforts to ensure the resumption of class-complaint proceedings. Therefore, not only this motion but the entire case is moot.

##### 1. Plaintiffs lack standing

Article III standing "doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). That's because "Federal courts do not exercise general legal oversight of the Legislative and Executive Branches." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021). Plaintiffs "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged

conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. Also, "standing is not dispensed in gross." *TransUnion*, 594 U.S. at 431. Plaintiffs separately "must demonstrate standing for each claim that they press and for each form of relief that they seek." *Id.*

Plaintiffs allege that EEOC has "[d]elay[ed]" processing their administrative complaints. Compl. ¶ 50. "The Supreme Court has ruled repeatedly that the 'deprivation of a procedural right' alone, like an agency's failure to process an administrative complaint, 'is insufficient to create Article III standing.'" *Campaign Legal Ctr. v. Fed. Election Comm'n*, 860 F. App'x 1, 4 (D.C. Cir. 2021) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)). A plaintiff's "interest 'in proper administration of the laws (specifically, in agencies' observance of a particular, statutorily prescribed procedure)' is a generic interest in good government that is shared equally by all citizens and does not amount to a concrete or particularized Article III injury." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 576 (1992)); *see, e.g.*, *Csoka v. FDA*, No. CV 24-1486 (ABJ), 2025 WL 958364, at *2 (D.D.C. Mar. 31, 2025).

"[T]he cognizability of procedural injuries . . . depends on whether Plaintiffs have shown a 'substantial probability' of future harm" to a concrete interest. *Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Hum. Servs.*, 656 F. Supp. 3d 137, 156 (D.D.C. 2023) (quoting *Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 184–85 (D.C. Cir. 2017)). Under D.C. Circuit precedent, "the proper way to analyze an increased-risk-of-harm claim is to consider the ultimate alleged harm—such as death, physical injury, or property damage . . . —as the concrete and particularized injury and then to determine whether the increased risk of such harm makes injury to an individual citizen sufficiently 'imminent' for standing purposes." *Food & Water Watch*, 808 F.3d at 915 (quoting *Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1298 (D.C. Cir. 2007)). Plaintiffs must "show *both* (i) a *substantially* increased risk of harm and (ii) a *substantial* probability of harm with that increase taken into account." *Id.* at 914 (internal quotations omitted) (emphases in original). They fall far short of satisfying these requirements.

Plaintiffs generically contend that "[d]elay impairs the evidentiary record in class cases." Compl. ¶ 51. But the potential for imperfections in an administrative proceeding is "abstract," not the sort of "real" and "concrete" harm required for standing. *Spokeo*, 578 U.S. at 340. And even if it could qualify, Plaintiffs make no attempt to show it is substantially likely to occur in *Pippen*—the only EEOC proceeding involving Chelette and Boyd and the only one specifically identified by AFGE as having member participation. *See* ECF No. 13-1 (Mem.) 13; ECF No. 13-2 ¶ 15; Compl. ¶¶ 14, 16-17. Neither their "conclusory statements," *Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021) (quotation omitted), nor "unadorned speculation" suffice to establish standing, *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 44 (1976).

Otherwise, Plaintiffs cite the "ongoing risk of being subjected to severe sexual harassment" while *Pippen* remains pending. Compl. ¶ 53; *see* Mem. 13, 24. But that risk can only be mitigated if Plaintiffs prevail on the merits in *Pippen* and the Bureau of Prisons implements corrective action. "When considering any chain of allegations for standing purposes," the Court should "reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties), as well as predictions of future injury that are not normally susceptible of labelling as 'true' or 'false.'" *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015) (quotation omitted). Here, Plaintiffs layer speculation about third parties atop speculation; for example, whether the administrative judge will rule for Plaintiffs in *Pippen*, whether the Bureau of Prisons would agree to implement the administrative judge's decision or instead appeal to the EEOC Office of Federal Sector, and whether the EEOC would reject an agency appeal. *See* 29 C.F.R. §§ 1614.204(i)-(j), 1614.403, 1614.405. Any doubt about the insufficiency of this theory is dispelled by Plaintiffs' concession that any "hostile work environment" at FCC Pollock "cannot be repaired by an eventual final judgment in this APA case." Mem. 24. If the injury is not "likely to be redressed by a favorable judicial decision," it cannot support standing. *Spokeo*, 578 U.S. at 338.

AFGE's presence in the suit does not fill the gap in Article III standing. For associational standing, AFGE "must 'show that at least one specifically-identified member has suffered an

injury-in-fact' or that such an injury is 'imminent.'" *Pharm. Rsch.*, 656 F. Supp. 3d at 149 (quoting *Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 820 (D.C. Cir. 2006)). AFGE claims "several class members in the *Pippen* matter who are AFGE members," ECF No. 13-2 ¶ 15, but, for all the reasons above, Plaintiffs have not proved a valid theory of standing arising from *Pippen*. Otherwise, AFGE vaguely gestures at unknown "members pursuing EEO claims" in unidentified matters who also "may be affected." ECF No. 13-2 ¶ 15. Because AFGE has not identified those other administrative proceedings, much less the affected members, they cannot create associational standing. *See Am. Chemistry Council*, 468 F.3d at 820; *Pharm. Rsch.*, 656 F. Supp. 3d at 149.

To the extent AFGE attempts to show organizational standing, *see* Compl. ¶ 15, it fares no better. AFGE contends that it has become harder to "give members reliable guidance about whether to pursue a class complaint" and its "existing training materials . . . may not longer reflect what members will actually encounter." ECF No. 13-2 ¶¶ 12-13. That amounts to nothing more than "a setback to [AFGE's] abstract social interests," which does not confer standing upon an organization. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024); *see, e.g.*, *Ctr. for Biological Diversity v. U.S. Dep't of the Interior*, 144 F.4th 296, 315 (D.C. Cir. 2025).

### 2. The suspension issue is moot because EEOC proceedings already have resumed

Even if Plaintiffs had standing when they filed suit, their motion for preliminary relief, if not this entire case, is now moot. A claim becomes moot "when the issues presented are no longer 'live.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). "Corrective action by an agency is one type of subsequent development that can moot a previously justiciable issue." *Nat. Res. Def. Council v. U.S. Nuclear Regul. Comm'n*, 680 F.2d 810, 814 (D.C. Cir. 1982). And "when one agency action supersedes another, prospective challenges to the superseded agency action generally become moot" because "vacating the old agency action will not deliver the plaintiff any relief." *Anderson v. U.S. Dep't of Hous. & Urb. Dev.*, 731 F. Supp. 3d 19, 31 (D.D.C. 2024).

The purpose of Plaintiffs' motion for a preliminary injunction was for the Court to "require the Commission to resume normal processing of class complaints." Mem. 2. A new scheduling order already has issued in *Pippen*, which explicitly "supersede[d]" the previous abeyance order. Ex. A, at 1. And *Pippen* is the only proceeding in which Chelette and Boyd are participants, and which AFGE specifically identified as having member participation. *See* Mem. 13; ECF No. 13-2 ¶ 15. Because Plaintiffs "obtained the relief [they] asked for" and the alleged harms from an ongoing suspension of the proceeding "have been eradicated," this issue "is moot." *Chavis v. Garrett*, 419 F. Supp. 3d 24, 34 (D.D.C. 2019).

Moreover, "it is clear that the" challenged suspension "will not recur." *Id.* After all, there was no "Suspension Directive." Rose Decl. ¶ 3. EEOC *agrees* that the processing of class complaints should not have been suspended. Once the agency became aware of Plaintiffs' allegations, it promptly and voluntarily reassigned *Pippen* to a new administrative judge to ensure the matter continues apace. Furthermore, EEOC ensured that scheduling orders were issued in proceedings where Plaintiffs are not even participants but were merely mentioned in their filings. *See* Exs. B, C. Given the agency's demonstrated good faith, "there is no need for injunctive relief." *W. Watersheds Project v. Bernhardt*, 468 F. Supp. 3d 29, 41 (D.D.C. 2020). Courts, after all, cannot "grant just-in-case injunctive relief," *id.*, especially not while "pay[ing] particular regard for the public consequences in employing the extraordinary remedy of injunction," *Winter*, 555 U.S. at 24 (quotation omitted).

### B. Plaintiffs do not challenge any final agency action

It is blackletter law that the APA "does not provide judicial review for everything done by an administrative agency." *Hearst Radio, Inc. v. FCC*, 167 F.2d 225, 227 (D.C. Cir. 1948). Two "threshold questions" for every APA claim are "[w]hether there has been 'agency action'" and then "'final agency action' within the meaning" of 5 U.S.C. §§ 702 and 704. *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.C. Cir. 2006). "[I]f these requirements are not met," the APA claim "is not reviewable." *Id.*

The only purported final agency action Plaintiffs challenge is the so-called "Suspension Directive." Compl. ¶¶ 63, 70, 75. Plaintiffs merely speculate about its existence based on a stray line in a single administrative judge's scheduling order—an order that the new presiding judge clarified "was issued in error," Ex. A, at 1—and unspecified delays in other proceedings, *see* Mem. 11. However, Plaintiffs' suspicions are without merit. EEOC *never issued* such a directive. Rose Decl. ¶ 3. Because the challenged action is a fiction, there is no basis for an APA claim.[2]

To the extent Plaintiffs try to recast this suit as a challenge to the general state of EEOC administrative adjudication, that "kind of broad programmatic attack" is not cognizable under the APA. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). "The APA was not built to vindicate programmatic challenges to day-to-day agency operations." *Ass'n for Educ. Fin. & Pol'y, Inc. v. McMahon*, 786 F. Supp. 3d 13, 22 (D.D.C. 2025). Nor can Plaintiffs "seek *wholesale* improvement of" EEOC's processing of federal-sector class complaints "by court decree." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990).

## II. Plaintiffs have not clearly shown irreparable harm

The Court also should deny Plaintiffs' motion for "failure to show any irreparable harm." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). The D.C. Circuit "has set a high standard for irreparable injury." *Id.* "Such injury must be both certain and great, actual and not theoretical, beyond remediation, and of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (cleaned up). Plaintiffs fall far short of that mark.

For starters, Plaintiffs waited "nearly eight months" before seeking emergency relief. Mem. 23. This "unexcused delay . . . implies a lack of urgency and irreparable harm." *Sierra Club v. EPA*, 793 F. Supp. 3d 158, 165 (D.D.C. 2025) (quoting *Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014)). Indeed, the more than 200 days that Plaintiffs waited is far longer than prior "inexcusable" delays that courts deemed to belie

[2] Likewise, there is no administrative record.

irreparable harm. *Sierra Club*, 793 F. Supp. 3d at 165; *see, e.g.*, *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (finding 44-day "delay to be inexcusable" and affirming denial of preliminary injunction); *Sierra Club*, 793 F. Supp. 3d at 165 (around 100 days); *Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 44 (D.D.C. 2000) (two months).

Delay aside, none of Plaintiffs' theories of irreparable harm provide adequate grounds for extraordinary relief. Chelette and Boyd argue that their "exposure to the hostile work environment" at FCC Pollock "can constitute irreparable harm." Mem. 24. Yet they concede "[t]hat injury cannot be repaired" in "this APA case." *Id.* That dooms the theory because "the irreparable harm considered by the court must be caused by the conduct in dispute and remedied by the relief sought." *Sierra Club v. U.S. Dep't of Energy*, 825 F. Supp. 2d 142, 152–53 (D.D.C. 2011).

Here, the challenged conduct is the pace "of federal-sector class complaint processing" by EEOC. Mem. 1. Even if the Court grants the requested preliminary relief, that "would not actually remedy" any "harm" from conditions at FCC Pollock. *Sierra Club*, 825 F. Supp. 2d at 153. Amelioration of such harm "depend[s] on actions that may or may not be taken by other courts," administrative tribunals, "or non-parties," such as the Bureau of Prisons, "over which this Court does not have control." *Cayuga Nation v. Zinke*, 302 F. Supp. 3d 362, 373 (D.D.C. 2018). Because "the injunctive relief Plaintiffs seek would not necessarily prevent" these harms "from occurring," "[t]his disconnect and uncertainty counsel against granting preliminary injunctive relief." *Id.*; *see, e.g.*, *Mott Thoroughbred Stables, Inc. v. Rodriguez*, 87 F. Supp. 3d 237, 247 (D.D.C. 2015) ("[A] preliminary injunction is particularly ill-suited here because it would not necessarily redress the alleged irreparable harm.").

Slicing the harm more finely, Chelette and Boyd next claim the mere delay in EEOC proceedings "inflicts irreparable injury" because witness "memories fade," "decisionmakers change," and "records . . . become harder to obtain." Mem. 24. But Plaintiffs offer no evidence these alleged harms will occur in *Pippen*, much less "*before a decision on the merits can be rendered.*" *Nat'l Parks Conservation Ass'n v. Semonite*, 282 F. Supp. 3d 284, 289 (D.D.C. 2017)

(quotation omitted) (emphasis in original). And even if they had, both the Supreme Court and the D.C. Circuit are clear that "the expense and disruption of" participating "in protracted adjudicatory proceedings," even if "substantial," does not "constitute[] irreparable harm." *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980); *see Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."); *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 108 (D.C. Cir. 1986) ("The usual time and effort required to pursue an administrative remedy does not constitute irreparable injury.").

Chelette and Boyd also are not stuck "in limbo." Mem. 25. Not only has *Pippen* resumed, but they can file "a civil action in" federal district court at any time. 29 C.F.R. § 1614.407. *Compare id.* § 1614.407(b) (authorizing suit "[a]fter 180 days from the date of filing an individual or class complaint if agency final action has not been taken"), *with* ECF No. 13-5, at 2 (complaint filed on February 16, 2024). Plaintiffs admit this option but prefer to avoid the time and expense of litigation in federal court. Mem. 25-26. That is their choice to make. But having made it, "the Court's role" now is not "to grant emergency relief to protect a party from the consequences of its own fully-informed decisions." *Friends of Capital Crescent Trail v. Fed. Transit Admin.*, 263 F. Supp. 3d 144, 151 (D.D.C. 2017). Nor may the Court ignore how "the possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation" in federal court or before the EEOC, "weighs heavily against a claim of irreparable harm." *Clevinger v. Advoc. Holdings, Inc.*, 134 F.4th 1230, 1234 (D.C. Cir. 2025) (quotation omitted).[3]

With no irreparable harm to themselves, Chelette and Boyd also cannot bootstrap upon the specter of "a 'chilling effect' on federal workers' future use of the EEOC's administrative process." Mem. 26. "Abstract harm that might befall unnamed third parties does not satisfy the

[3] The reparability of "adverse employment actions" explains why they "traditionally *do not* qualify as irreparable harm in the preliminary injunction context." *Church v. Biden*, 573 F. Supp. 3d 118, 139 (D.D.C. 2021).

irreparable harm requirement in the context of emergency injunctive relief, which must instead be connected specifically to the parties before the Court." *Church*, 573 F. Supp. 3d at 146; *see, e.g.*, *Alcresta Therapeutics, Inc. v. Azar*, 318 F. Supp. 3d 321, 326 (D.D.C. 2018) ("[I]njuries to third parties are not a basis to find irreparable harm."); *Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203, 213 (D.D.C. 2012).

Finally, AFGE fares no better at demonstrating irreparable harm through the alleged impairment of its mission. *See* Mem. 27. "Purported harm to an organizational mission is not a hall pass permitting plaintiffs to bypass the usual yet demanding requirements for obtaining that extraordinary relief." *Citizens for Resp. & Ethics in Wash. v. U.S. Ctrs. for Disease Control & Prevention*, 786 F. Supp. 3d 83, 96 (D.D.C. 2025). At most, AFGE suggests "the efforts of AFGE's WFP department to counsel and represent its members in EEOC proceedings" may be less effective because it is less confident in its "guidance" and predictions about "what will become of a class complaint." Mem. 27. But AFGE does not contend this is its "primary mission." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016). Rather, it engages in diverse initiatives "from working with Congress on legislation" to "mobilizing members for elections" and "contract administration." AFGE Departments & Districts, https://www.afge.org/about-us/afge-departments-districts/ (last visited Aug. 13, 2026). Thus, any diminution in AFGE's perceived value of its own advice does not amount to a "certain and great, actual and not theoretical" injury to the organization itself. *Mexichem*, 787 F.3d at 555; *see Corp. for Pub. Broad. v. Fed. Emergency Mgmt. Agency*, 792 F. Supp. 3d 67, 80 (D.D.C. 2025) (no irreparable harm when entity with a "sweeping organizational mission" faced adverse effect to "a slice of [that] mission").

Likewise, any "marginal uncertainty" by AFGE about the value of its advice or "how to best use [its] resources . . . is not an irreparable harm." *Citizens for Resp. & Ethics*, 786 F. Supp. 3d at 95. Such uncertainty is not "irremediable 'in the ordinary course of litigation.'" *Id.* at 97 (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297–98). Exactly the opposite. For instance, the positions of EEOC and the rulings of the Court assuredly will clarify the value of AFGE's

"existing training materials." Mem. 27. Accordingly, AFGE "has not identified the kind of injury to its mission—no matter how significant—that would warrant preliminary relief." *Citizens for Resp. & Ethics*, 786 F. Supp. 3d at 97.

At bottom, Plaintiffs have not carried their heavy burden to establish the irreparable harm necessary for the extraordinary relief they seek.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for a preliminary injunction or a stay under 5 U.S.C. § 705.

August 13, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

AMBER RICHER
Assistant Director

/s/ James W. Harlow
JAMES W. HARLOW
Senior Trial Counsel
Federal Programs Branch
Civil Division
U.S. Department of Justice
1100 L Street NW
Washington, DC 20005
(202) 514-6786
james.w.harlow@usdoj.gov