**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| American Federation of Government Employees, AFL-CIO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. Equal Employment Opportunity Commission, *et al.*,<br><br>Defendants. | Case No. 1:26-cv-02640-CKK |

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND FAILURE TO STATE A CLAIM FOR RELIEF**

## TABLE OF CONTENTS

INTRODUCTION ........ 1
BACKGROUND ........ 2
LEGAL STANDARD ........ 3
ARGUMENT ........ 4
I. Plaintiffs lack standing ........ 4
A. Chelette and Boyd ........ 5
B. AFGE ........ 8
II. Plaintiffs' APA claims fail as a matter of law ........ 9
A. Title VII affords an adequate, alternate remedy ........ 10
B. The alleged processing pause is not final agency action ........ 12
CONCLUSION ........ 13

## INTRODUCTION

If nothing happens in a federal case for several months, the individual plaintiff—much less, the organization to which they belong—does not suffer a concrete injury at the hands of the court as a result. That remains true no matter how frustrating the plaintiff finds the delay or how stridently they disagree with it. The same logic applies to this case.

Plaintiffs Deanna Chelette and Alexzandria Boyd are participating in a proceeding before an Equal Employment Opportunity Commission (EEOC) administrative judge, *Pippen v. Federal Bureau of Prisons*, to challenge their workplace conditions. The administrative judge then-presiding over *Pippen* paused the proceeding in December 2025 until further notice. Chelette, Boyd, and the American Federation of Government Employees, AFL-CIO (AFGE), which counts Chelette as a member, filed this suit to challenge a purported secret EEOC directive to suspend processing of administrative class complaints of employment discrimination at federal agencies.

However, Article III does not permit a federal court to exercise general legal oversight of the Executive Branch, including the EEOC. A court may pass upon the legality of government action only if the plaintiff establishes a concrete, particularized, and actual or imminent injury traceable to the challenged action and redressable by the judicial relief requested—in other words, Article III standing. Plaintiffs here have not met their burden, even at the pleading stage, to establish standing. Neither Chelette nor Boyd nor AFGE have plausibly alleged a cognizable, concrete injury from a few months of inaction in *Pippen*, or any other EEOC administrative proceeding, that is redressable by a favorable judgment from this Court. Accordingly, the Court should dismiss this case for lack of subject-matter jurisdiction.

Additionally, Administrative Procedure Act (APA) review is precluded by the existence of an adequate, alternate remedy. Numerous cases within this Circuit recognize that challenges to alleged procedural deficiencies or errors by the EEOC may be raised as part of a Title VII suit in federal court. That option displaces any right to proceed under the APA, which dooms this suit. So does Plaintiffs' failure to plausibly allege that a pause in processing rises to the level of final agency action.

## Background

"[D]iscrimination based on race, color, religion, sex, or national origin" in the federal workplace is prohibited. 42 U.S.C. § 2000e-16(a). A federal employee may file suit to enforce this prohibition as long as they first exhaust administrative remedies. *See id.* § 2000e-16(c); *see also Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 171 (D.D.C. 2016). After an initial counseling process, the employee must file an administrative complaint with their employer agency. *See Achagzai*, 170 F. Supp. 3d at 171; *see also* 29 C.F.R. § 1614.105. The employee may file a civil action in district court immediately after the agency issues an adverse decision on the complaint, upon completion of administrative appeals to the EEOC, or as soon as the agency (or the EEOC) fails to take final action within certain timeframes. *See Achagzai*, 170 F. Supp. 3d at 171–72; *see also* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.110.

If an employee believes the allegedly discriminatory conduct at an agency might sweep broader than themselves, they may file an administrative class complaint. 29 C.F.R. § 1614.204. An EEOC administrative judge then processes the complaint from the initial decision whether to accept or dismiss the complaint up to (if necessary) a decision on the merits and the nature of relief. *See id.* § 1614.204(d)–(i). "Within 60 days of receipt of the administrative judge's decision," the agency "issu[es] a final order" notifying the employee whether "the agency will fully implement the decision of the administrative judge," as well as the employee's "right to appeal to the" EEOC or "to file a civil action in federal district court." *Id.* § 1614.204(j)(1); *see also id.* § 1614.403, 1614.405 (administrative appeals process). Even absent a final action from the agency initially or the EEOC on appeal, the employee's right "to file a civil action" accrues as long as the matter has been pending before either body for at least 180 days without a decision. *Id.* § 1614.407(b), (d); *see also* 42 U.S.C. §§ 2000e-16(c), 2000e-5(f).

One such class complaint is *Pippen v. Bureau of Prisons*, which alleges discrimination at the Federal Correctional Complex in Pollock, Louisiana. *See* Compl. (ECF No. 1) ¶¶ 36–38. The administrative complaint was filed in February 2024. ECF No. 13-5, at 2 (complaint of discrimination). In March 2025, the EEOC administrative judge certified the class; the

Department of Justice accepted the decision. Compl. ¶¶ 40–41. Plaintiff Deanna Chelette is a class agent in *Pippen*, while co-plaintiff Alexzandria Boyd is a class member. *Id.* ¶¶ 16–17.

On December 10, 2025, the administrative judge then-presiding over *Pippen* issued a notice that case processing was "paused until further notice." *Id.* ¶ 43; *see* ECF No. 13-10, at 2. The administrative judge further stated, without supporting citation or explanation, that "[t]his notification applies to all class cases in the federal sector." Compl. ¶ 43.[1] The administrative judge "removed [*Pippen*] from 'stay' status" in June 2026 but "processing remain[ed] paused." ECF No. 13-11, at 4; *see* Compl. ¶ 44.

On July 28, 2026, Chelette and Boyd—as well as the American Federation of Government Employees, AFL-CIO (AFGE)—challenged the purported "categorical and indefinite suspension of federal-sector class complaints pending before [EEOC] administrative judges" through this Administrative Procedure Act (APA) suit. Compl. ¶ 1. In Counts I and II, Plaintiffs allege the supposed "Suspension Directive" is unlawful and must be set aside under 5 U.S.C. § 706(2). *See* Compl. ¶¶ 57–72. Count III seeks a judicial "order under 5 U.S.C. § 706(1) compelling the EEOC to resume and complete the processing of federal-sector class complaints." Compl. ¶ 77.

The EEOC now moves to dismiss the Complaint for lack of subject-matter jurisdiction and failure to state a claim for relief.

## LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject-matter jurisdiction, *i.e.*, its "power to decide the claim before it." *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017). The court must "presume" it "lack[s] jurisdiction unless . . . the party asserting federal jurisdiction" has met their "burden of establishing it." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (citation modified). At the pleading phase, the "plaintiff

[1] In weighing a Rule 12(b)(1) challenge to standing, the Court will "assume *arguendo* the merits of" Plaintiffs' APA claim. *Tanner-Brown v. Haaland*, 105 F.4th 437, 445 (D.C. Cir. 2024) (citation modified). Consistent with this governing standard, the EEOC assumes the same, solely for purposes of this motion.

must plausibly allege all jurisdictional elements." *Brownback v. King*, 592 U.S. 209, 217 (2021). If they fail to do so, "the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see Ex parte McCardle*, 74 U.S. 506, 514 (1868) (once jurisdiction "ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause").

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss" under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The "court must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. Dist. of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 675, 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. And "if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

## ARGUMENT

### I. Plaintiffs lack standing

Article III standing "doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). That's because "Federal courts do not exercise general legal oversight of the Legislative and Executive Branches." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021). A party's "disagreement" with the government's conduct, "however sharp and acrimonious," "is insufficient by itself to meet Art. III's requirements." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) (citation modified). Nor is a plaintiff's mere "participation in agency proceedings." *Fund Democracy, LLC v. SEC*, 278 F.3d 21, 27 (D.C. Cir. 2002) (citation modified).

Rather, Plaintiffs "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. "[A]t the pleading stage," Plaintiffs "must clearly allege facts demonstrating each element," *id.*, to the level of plausibility, *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 513 (D.C. Cir. 2016). Also, "standing is not dispensed in gross." *TransUnion*, 594 U.S. at 431. Plaintiffs separately "must demonstrate standing for each claim that they press and for each form of relief that they seek." *Id.* No Plaintiff here has satisfied that burden.

### A. Chelette and Boyd

Chelette and Boyd allege several theories of harm; none of which suffices to show standing. To start, they assert denial of "procedural rights" by the pause in *Pippen*. Compl. ¶¶ 2–3, 48. But "[t]he Supreme Court has ruled repeatedly that the 'deprivation of a procedural right' alone, like an agency's failure to process an administrative complaint, 'is insufficient to create Article III standing.'" *Campaign Legal Ctr. v. Fed. Election Comm'n*, 860 F. App'x 1, 4 (D.C. Cir. 2021) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)). A plaintiff's "interest 'in proper administration of the laws (specifically, in agencies' observance of a particular, statutorily prescribed procedure)' is a generic interest in good government that is shared equally by all citizens and does not amount to a concrete or particularized Article III injury." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 576 (1992)); *see, e.g.*, *Csoka v. FDA*, No. CV 24-1486 (ABJ), 2025 WL 958364, at *2 (D.D.C. Mar. 31, 2025). Because "an injury in law is not an injury in fact," plaintiffs must show they have been "*concretely harmed* by" the alleged violation and this harm is actual or imminent. *TransUnion*, 594 U.S. at 427; *see, e.g.*, *Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Hum. Servs.*, 656 F. Supp. 3d 137, 156 (D.D.C. 2023).

Chelette and Boyd contend the pause "reduces the likelihood that class members will receive effective relief" because it may be "harder . . . to identify affected employees" and gather evidence. Compl. ¶¶ 50–51. The "proper way to analyze" this sort of "increased-risk-of-harm claim is to consider the ultimate alleged harm—such as death, physical injury, or property

damage . . . —as the concrete and particularized injury and then to determine whether the increased risk of such harm makes injury to an individual citizen sufficiently 'imminent' for standing purposes." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 915 (D.C. Cir. 2015) (quoting *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1298 (D.C. Cir. 2007)). Chelette and Boyd thus must "show *both* (i) a *substantially* increased risk of harm and (ii) a *substantial* probability of harm with that increase taken into account." *Id.* at 914 (citation modified).

The generic allegations of potential "evidentiary" or administrative imperfections in the processing of *Pippen* do not suffice. Compl. ¶¶ 50–51. Such notions are "abstract," not the "real" and "concrete" harm required for standing. *Spokeo*, 578 U.S. at 340. Even if not categorically ineligible, Chelette and Boyd have not plausibly shown a substantial probability of this occurring in *Pippen*. They do not clearly allege facts, for instance, that, if true, would show that in *Pippen* "[w]itnesses [will] become unavailable, memories [will] fade, and documents [will] become more difficult to locate." Compl. ¶ 51; *Spokeo*, 578 U.S. at 338. Neither their "conclusory statements," *Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021) (quotation omitted), nor "unadorned speculation" suffice, *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 44 (1976).

Otherwise, Chelette and Boyd cite the "ongoing risk of being subjected to severe sexual harassment" while *Pippen* remains pending. Compl. ¶ 53. That risk can only be mitigated if the EEOC administrative judge finds in their favor on the merits and orders remedial action *and* the Bureau of Prisons agrees to "fully implement the decision of the administrative judge" *or* the EEOC's Office of Federal Sector rejects any appeal that the Bureau of Prisons might file. *See* 29 C.F.R. §§ 1614.204(i)–(j), 1614.403, 1614.405. Every link in this "chain of allegations" should be "reject[ed] as overly speculative . . . predictions of future events (especially future actions to be taken by third parties), as well as predictions of future injury that are not normally susceptible of labelling as 'true' or 'false.'" *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015) (citation modified). "Article III demands more certainty" than "a prediction not only about *whether* the" administrative judge, the Bureau of Prisons, and the Office of Federal Sector—all independent

third parties—will act in a certain way and *when* they will act "but also about the shape that any such action might ultimately take." *Trump v. California*, No. 26A124, 2026 WL 2473573, at *2 (U.S. Aug. 24, 2026); *see Trump v. New York*, 592 U.S. 125, 131–32 (2020) (per curiam).[2]

If we "consider the matter from the point of view of" the redressability requirement, the lack of standing becomes even clearer. *California v. Texas*, 593 U.S. 659, 671 (2021). "To determine whether an injury is redressable, a court will consider the relationship between the judicial relief requested and the injury suffered." *Id.* (citation modified). Even if the alleged "Suspension Directive" were set aside (assuming, as we must, that it exists),[3] Plaintiffs have not shown this "would create a significant increase in the likelihood that" they "would obtain relief that directly redresses the injury suffered." *Klamath Water Users Ass'n v. FERC*, 534 F.3d 735, 739 (D.C. Cir. 2008). Such relief would depend, at a minimum, on subsequent discretionary decisions by independent actors at the EEOC and the Bureau of Prisons. Indeed, that is why Plaintiffs *concede* the alleged "hostile work environment" at FCC Pollock "cannot be repaired by an eventual final judgment in this APA case." ECF No. 13-1, at 24. Because the injury is not "likely to be redressed by a favorable judicial decision," it cannot support standing. *Spokeo*, 578 U.S. at 338; *cf. Cross v. EEOC*, 810 F. Supp. 3d 88, 100 (D.D.C. 2025) (order directing EEOC to reopen investigation would not redress alleged "true injuries" from workplace discrimination because court "could not require a certain depth, length, or outcome from the [EEOC] investigation").

Neither Chelette nor Boyd plausibly demonstrated individual Article III standing.

---

[2] Furthermore, at least Chelette may avoid entirely this uncertainty about the administrative process by filing "a civil action in" federal district court at any time. 29 C.F.R. § 1614.407. *Compare id.* § 1614.407(b) (authorizing suit "[a]fter 180 days from the date of filing an individual or class complaint if agency final action has not been taken"), *with* ECF No. 13-5, at 2 (complaint filed on February 16, 2024). Her "failure to pursue a safer available option" to litigate the merits of her Title VII claim make "the alleged injury 'self-inflicted,'" which "destroy[s] traceability." *Arizona v. EPA*, 77 F.4th 1126, 1130 (D.C. Cir. 2023).

[3] In reality, neither the Commission nor the Chair directed anything of the sort, and *Pippen* is plowing ahead under a scheduling order issued on August 10, 2026. *See* ECF No. 18-5 ¶¶ 3–4.

### B. AFGE

AFGE's presence as a plaintiff does not salvage subject-matter jurisdiction. To the extent AFGE relies on associational standing, it first "must 'show that at least one specifically identified member has suffered an injury-in-fact' or that such an injury is 'imminent.'" *Pharm. Rsch.*, 656 F. Supp. 3d at 149 (quoting *Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 820 (D.C. Cir. 2006)); *see Summers*, 555 U.S. at 498 ("our prior cases . . . have required plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm"). The only identified AFGE member is Chelette, Compl. ¶ 16, who we know lacks standing to sue on her own. So AFGE cannot establish associational standing through Chelette.

AFGE also gestures at other unnamed AFGE members who are covered by the *Pippen* class or who are "pursuing EEO claims at multiple other agencies" and "may be affected." Compl. ¶ 14; ECF No. 13-2 ¶ 15. But "it is not enough to aver that unidentified members have been injured" in unspecified administrative proceedings. *Chamber of Commerce of U.S. v. EPA*, 642 F.3d 192, 199–200 (D.C. Cir. 2011); *see Am. Chemistry Council*, 468 F.3d at 820; *Pharm. Rsch.*, 656 F. Supp. 3d at 149. Nor does a vague allegation that an unknown member "may be affected," Compl. ¶ 14, plausibly show a specific member "suffered a 'concrete and particularized' injury," which could support that member's own standing, *Elec. Priv. Info. Ctr. v. U.S. Dep't of Com.*, 928 F.3d 95, 101 (D.C. Cir. 2019) (quoting *Lujan*, 504 U.S. at 560). Thus, AFGE cannot rely on associational standing.

AFGE fares no better at showing organizational standing. *See* Compl. ¶ 15. Organizational plaintiffs like AFGE "must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393–94 (2024). Also like an individual, AFGE cannot "establish standing simply based on the intensity of [its] interest" or because of strong opposition to the government's conduct, no matter how longstanding the interest and no matter how qualified the organization." *Id.* at 394 (citation modified).

AFGE alleges an impairment of its "ability to effectively counsel and represent members who are involved with or seeking to utilize the EEOC's federal-sector complaint process." Compl. ¶ 15. The organizational plaintiffs in *Alliance for Hippocratic Medicine* similarly alleged the challenged action had "impaired their ability to provide services and achieve their organizational missions." 602 U.S. at 394 (citation modified). "That argument," the Supreme Court said, "does not work to demonstrate standing." *Id.* So too here.

AFGE attorneys concededly "will continue to provide[] direct representation to AFGE's members in hundreds of cases before the EEOC," as well as "counseling for AFGE's members, including with respect to the EEOC's class complaint process." Compl. ¶ 15. AFGE is merely less confident in its "guidance" and ability to predict "what will become of a class complaint." ECF No. 13-2 ¶ 13. This is not the sort of "real" and "concrete" harm required for standing. *Spokeo*, 578 U.S. at 340. It is "simply a setback to [AFGE's] abstract social interests." *All. for Hippocratic Med.*, 602 U.S. at 394. AFGE attempts to escape that fact by suggesting its "existing training materials" may need an update. ECF No. 13-2 ¶ 14. But "[a]n organization cannot manufacture its own standing," the Supreme Court says, "by expending money to gather information" and "better inform their members" about the challenged conduct. *All. for Hippocratic Med.*, 602 U.S. at 394. Therefore, AFGE has not plausibly demonstrated standing to sue in its own right.

## II. Plaintiffs' APA claims fail as a matter of law

Even if Plaintiffs could plausibly allege standing, they failed to state a legally viable APA claim. "Section 704 of the APA limits judicial review under that statute to [final] agency action 'for which there is no other adequate remedy in a court.'" *Virgin Islands Hous. Fin. Auth. v. Fed. Emergency Mgmt. Agency*, 151 F.4th 409, 417 (D.C. Cir. 2025) (quoting 5 U.S.C. § 704). Here, the Complaint fails to state an APA claim because Title VII provides an adequate alternative remedy and the challenged conduct does not rise to the level of final agency action.

### A. Title VII affords an adequate, alternate remedy

"APA review is not available if Congress has provided a special and adequate review procedure elsewhere." *Id.* at 418 (citation modified); *see Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 143 F.4th 518, 527 (D.C. Cir. 2025) ("the APA's adequate remedy bar . . . determines whether there is a cause of action under the APA") (citation modified). For federal workplace discrimination claims, Congress made clear that the administrative process is not an employee's only, or final, forum. Section 717(c) of Title VII provides that a federal employee "aggrieved by the final disposition of his complaint, *or by the failure to take final action on his complaint*," may file a civil action "after one hundred and eighty [180] days from the filing of the initial charge with the department, agency, or unit." 42 U.S.C. § 2000e-16(c) (emphasis added). Congress designed this remedy to be the exclusive avenue for judicial review of federal employees' discrimination claims. *Brown v. GSA*, 425 U.S. 820, 835 (1976).

The EEOC's regulations directly implement that command. A "complainant who has filed an individual complaint, an agent who has filed a class complaint or a claimant who has filed a claim for individual relief pursuant to a class complaint is authorized under title VII . . . to file a civil action in an appropriate United States District Court," among other times, "[a]fter 180 days from the date of filing an individual or class complaint if agency final action has not been taken." 29 C.F.R. § 1614.407(b). No right-to-sue notice is required; the right to sue vests by operation of law with the passage of time. And, once in court, the federal employee receives de novo review. *Chandler v. Roudebush*, 425 U.S. 840, 845–48, 861–64 (1976); *see also Hackley v. Roudebush*, 520 F.2d 108, 156–57 (D.C. Cir. 1975).

Both this Court and the D.C. Circuit have recognized "that de novo review" of EEOC administrative claims under Title VII "provides an adequate remedy in a court within the meaning of 5 U.S.C. § 704 for complaints about the EEOC's administrative process, precluding an APA challenge to the EEOC's procedures." *McCall v. Yang*, 179 F. Supp. 3d 92, 96 (D.D.C. 2016) (quoting *Wright v. Dominguez*, No. 04–5055, 2004 WL 1636961, at *1 (D.C. Cir. July 21, 2004)). In other words, "an adequate remedy in court exists with respect to *procedural*

challenges against the EEOC because a complainant may pursue a *substantive* discrimination claim in Federal district court." *McCall*, 179 F. Supp. 3d at 96. Courts have applied this principle to reject APA challenges to "the procedures used by the EEOC to process . . . discrimination complaints," *Wright*, 2004 WL 1636961, at *1; to "the EEOC's putative mishandling of [an] administrative complaint," *McCall*, 179 F. Supp. 3d at 96; and by plaintiffs generally "dissatisfied with *whatever* EEO process [they] may have received," *Seneca v. Price*, 257 F. Supp. 3d 95, 99 (D.D.C. 2017); *see also Ward v. EEOC*, 719 F.2d 311, 314 (9th Cir. 1983) (Title VII right of action was "an adequate remedy in a court for the alleged shortcomings in the EEOC's handling of the plaintiffs' charges" (citation modified)); *Nielsen v. Hagel*, 666 F. App'x 225, 231 (4th Cir. 2016) (Title VII cause of action was adequate alternative remedy for challenge of "procedural errors by the agency's EEO office," and that same principle applied "irrespective [of] whether the alleged discriminating entity is a private party or a governmental agency"); *Onyewuchi v. EEOC*, No. CV 24-1187 (SLS), 2025 WL 2029803, at *3 (D.D.C. July 21, 2025); *Harrigan v. Yang*, 168 F. Supp. 3d 25, 36 (D.D.C. 2016).

Plaintiffs' current attack on the EEOC's purported decision to pause processing of some administrative class complaints is no different. Plaintiffs challenge the Commission's alleged failure to process federal-sector class complaints at the pace Plaintiffs believe the regulations require. *See* Compl. ¶¶ 1–3, 9–10, 48–56, 60, 75–77. But nothing the EEOC has allegedly done (or failed to do) legally curtails Plaintiffs' ability to obtain a *de novo* adjudication of their claims against the Bureau of Prisons in district court.

The *Pippen* class complaint was filed with the Bureau of Prisons on February 16, 2024. ECF No. 13-5 at 2; *see also* Defs.' Opp'n, ECF No. 18, at 11. Because "agency final action has not been taken" on the class complaint within 180 days from that filing, each class agent—including Chelette—has been "authorized under title VII . . . to file a civil action in" district court since August 2024. 29 C.F.R. § 1614.407(b); *see* 42 U.S.C. § 2000e-16(c) (civil action available "after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit"). Members of the *Pippen* class, such as Boyd, also have a path to

district court. Section 1614.407 authorizes a civil action by "[a] complainant who has filed an individual complaint" after 180 days have run from that filing without final agency action. 29 C.F.R. § 1614.407(b). So a class member who separately files an individual complaint with the Bureau of Prisons may pursue her claim in district court 180 days after filing her individual complaint.

Plaintiffs cannot evade the Title VII remedial scheme by purporting to challenge an abstract EEOC policy about processing claims. "[N]o cause of action against the EEOC exists for challenges to its processing of a claim." *Smith v. Casellas*, 119 F.3d 33, 34 (D.C. Cir. 1997) (per curiam). Rather, Congress intended the Title VII civil action against the employer "to serve as the remedy for any improper handling of a discrimination charge by the EEOC." *Smith v. Casellas*, 119 F.3d 33, 34 (D.C. Cir. 1997) (per curiam); *see also Georator Corp. v. EEOC*, 592 F.2d 765, 768–69 (4th Cir. 1979) (Commission's processing determinations "fix no obligation nor impose any liability" and have "no effect until either the Commission or the charging party brings suit in district court").[4] But the same reason Title VII affords no claim against the Commission—Congress routed aggrieved employees to a de novo action against the employer—is the same reason that 5 U.S.C. § 704 forecloses their APA claim as well.

### B. The alleged processing pause is not final agency action

"The APA is a remedial scalpel, used to excise 'circumscribed and discrete' improper actions." *Ass'n for Educ. Fin. & Policy, Inc. v. McMahon*, 786 F. Supp. 3d 13, 22 (D.D.C. 2025) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004)). "But it is the wrong tool for

[4] Although *Smith* and *Georator* arose from private-sector charges, this Court has applied the same rule to a federal employee's challenge to the Commission's handling of her Part 1614 complaint, holding that "applicable case law forecloses any such a claim under Title VII against the EEOC." *McCall*, 179 F. Supp. 3d at 95 (citing *Smith*, 119 F.3d at 34); *accord Nielsen*, 666 F. App'x at 231 (rule applies "irrespective [of] whether the alleged discriminating entity is a private party or a governmental agency"). And just last year, another court in this District dismissed an APA challenge to an EEOC charge-processing policy, explaining that "[w]hat *would* remedy [the plaintiff's] true injuries" is "[a] Title VII claim" against the employer: "while this Court cannot redress [her] injuries, another may." *Cross v. EEOC*, 810 F. Supp. 3d 88, 100 (D.D.C. 2025) (quoting *Smith*, 119 F.3d at 34).

plaintiffs hoping to bludgeon through broad 'programmatic' attacks that 'demand a general judicial review of an agency's day-to-day operations.'" *Id.* (quoting *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 899 (1990)). The challenged action "must mark the consummation of the agency's decisionmaking process" and must "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation modified). A failure to satisfy either prong defeats finality. *Sw. Airlines Co. v. U.S. Dep't of Transp.*, 832 F.3d 270, 275 (D.C. Cir. 2016)

At a minimum, the alleged pause that Plaintiffs challenge fails the second *Bennett* prong because it does not affect legal rights. As this Court previously noted, the EEOC's "processing of [an] administrative complaint neither determines Plaintiff's 'rights or obligations' nor 'results in 'legal consequences.'" *McCall*, 179 F. Supp. 3d at 96. Like *McCall*, "[t]he aspects of the EEOC's process that" Plaintiffs "challenge had no such effects because Plaintiff[s] maintained the right to bring an action in Federal district court regardless of the EEOC's actions—or lack thereof." *Id.* "None of the EEOC's actions removed [their] private right of action" nor did they "affect[] the outcome of any such civil action that Plaintiff[s] could have brought in district court (but chose not to file)." *Id.* Thus, Plaintiffs' APA claims fail for lack of final agency action.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this case for lack of subject-matter jurisdiction or, if Plaintiffs have shown standing, for failure to state a viable APA claim.

September 28, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

AMBER RICHER
Assistant Director

/s/ James W. Harlow
JAMES W. HARLOW
Senior Trial Counsel

Federal Programs Branch
Civil Division
U.S. Department of Justice
1100 L Street NW
Washington, DC 20005
(202) 514-6786
james.w.harlow@usdoj.gov